UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| YUSEF JACKSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CV410-291 |
| AL ST. LAWRENCE (Chatham County Sheriff Complex); McAUTHUR HOLMES; LT. L. JOHNSON; CPL S. CRITTENTEN, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Proceeding *pro se* and using a 42 U.S.C. § 1983 form complaint, Chatham County, Georgia jail inmate Yusef Jackson sues his jailers for violating his right to practice his religion. Doc. 1. He has completed his *in forma pauperis* (IFP) filings, so under the Prison Litigation Reform Act (PLRA) the Court will now screen his case[1] for claims subject to

---

[1] The Court is disregarding the names of other so-called plaintiffs appearing on the caption of his complaint, doc. 1 at 1; *see also id.* at 8 ("Names of Plaintiffs") in that only Jackson has signed the complaint, doc. 1 at 6, and all *pro se* plaintiffs must sign their own pleadings. *Parker v. Walker*, 2008 WL 3334021 at *1 (S.D. IL. Aug. 8, 2008); 5A WRIGHT & MILLER: FEDERAL PRAC. & PROC. § 1333 (*Signature by Attorney or*

immediate dismissal as frivolous, malicious, or legally insufficient. 28 U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); *see also* 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions"); *Mack v. Yost*, 2011 WL 1740151 at * 1 (3rd Cir. May 6, 2011).[2]

---

*Party*) (2011). Also, each *pro se* plaintiff must bring his own lawsuit. *Hubbard v. Haley*, 262 F.3d 1194, 1197-98 (11th Cir. 2001) (PLRA does not permit a group of prisoners bringing an IFP, §1983 action against corrections officials to join claims and thereby divide a single mandatory filing fee among them); *Mackey v. Walker*, 2008 WL 4657879 at * 2 (S.D. Ga. Oct. 21, 2008). And "[i]t is well established that non-attorneys proceeding *pro se* cannot adequately represent a class." *Browder v. Parker*, 2011 WL 2379406 at * 2 (W.D. Ky. Jun. 15, 2011). The Clerk is thus **DIRECTED** to remove the other, would-be plaintiffs' names from the docket caption.

[2] Under § 1915A, the Court "shall" dismiss the complaint, if, *inter alia*, it fails to state a claim upon which relief may be granted. § 1915(b)(1). The standards that apply to a dismissal under Fed. R. Civ. P. 12(b)(6) apply to a dismissal under § 1915(b)(1). *Leal v. Georgia Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001). Under Rule 12(b)(6), the court views all allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But conclusory allegations are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1951 (2009).

The plaintiff must raise a plausible claim -- one where his alleged facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. Those alleged facts must also "raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[T]he complaint taken as a

Jackson complains that he and other Muslim inmates are being "harassed," discriminated against, and "dehumanized" in several ways. Doc. 1 at 5. He requests an injunction (though he does not use the term) requiring the jail

> to provide an area being in the form of a fifty six[-]cell unit just as the Christian[s] who are provided with two units of this size, better known as Christian Dorms. Also s[e]t aside an appointed area in every unit from one to six for Muslims to offer their obligatory five congregational (Salat) prayers daily. Provid[e] Muslims with [an] extra blanket to pray on and extra towel to cover urinal. Also a place in every unit to perform (Al [Jumu'ah]) Friday's Day of Assembly. Plaintiff is also suing the Chatham County Sheriff Complex for the sum of two million dollars for prejudice and discrimination, pain and suffering.

Doc. 1 at 6 (parentheses omitted). Plaintiff does not cite to any constitutional provision, much less the Religious Land Use and

---

whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote." *Atkins v. City of Chicago*, 631 F.3d 823, 831-32 (7th Cir. 2011), quoted in *Brandon v. Williams*, 2011 WL 1984619 at * 4 (S.D. Ga. May 19, 2011).

Finally, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S at 554-55 (citations omitted). Thus, a generic assertion that a defendant in some way inflicted harm is insufficient. *Ashcroft*, 129 S.Ct. at 1949. Naked assertions devoid of further factual enhancement fail, too. *Id*. Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555; *Miller v. Johnson*, 2011 WL 2174361 at * 4 (M.D. Fla. Jun. 2, 2011).

Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc–1.

It is well settled that "the courts may not serve as de facto counsel for the litigant or rewrite an otherwise deficient pleading in order to sustain an action." *Secretary, Florida Dept. of Corrections v. Baker*, 406 F. App'x 416, 422 (11th Cir. 2010). Still, *pro se* litigants are entitled to have their pleadings construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). And if they present the substantive elements of a claim and argue all but the label one might otherwise use to identify the claim, then courts may recognize them. *Baker*, 406 F. App'x at 422 (district court, in granting state prisoner's petition for federal habeas relief, properly treated prisoner's claim as one alleging violation of substantive due process through Confrontation Clause error, notwithstanding that prisoner's petition did not specify whether he claimed violation of procedural due process, substantive due process, or both; prisoner's claim, subsequent pro se reply brief, and counseled memorandum all mentioned and discussed concepts of substantive due process and Confrontation Clause violations).

As noted, Jackson "cites" only 42 U.S.C. § 1983 (which is printed on

4

the face of the form complaint he's used) but no law or any particular constitutional provision. Under the *Baker* prism, he *at best* may be said to allege official impingement of his First Amendment right to practice his religion. The same must be said for an Equal Protection Claim (i.e., Christians receive more accommodations than Muslims).

Meanwhile, Congress increased legal protections for religious practices under the RLUIPA. *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009); *Corouthers v. Flowers*, 2011 WL 1321833 at * 3 (N.D. Fla. Mar. 16, 2011). But that statute has its own complications (some noted below), Jackson has not cited it, and the Court draws the line at recognizing more sophisticated claims for *pro se* litigants who cite no law at all. *See GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("among the cardinal principles of our Anglo-American system of justice is the notion that the legal parameters of a given dispute are framed by the positions advanced by the adversaries, and may not be expanded sua sponte by the trial judge.") (quotes and cite omitted), *overruled in part on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

Consistent with the legal standards set forth below, the Court will "green-light" for the moment the minimum claims that Jackson appears to raise -- his right to practice his religion under the First Amendment's Free Exercise Clause and his Equal Protection claim. *See Williams v. Book*, 2011 WL 2173743 at * 2 (E.D. Cal. Jun. 2, 2011) (because inmate mentioned RLUIPA but did not press a claim under it, court analyzed his religion-based claims under the Free Exercise Clause, but noted no viable RLUIPA claim even if raised).

## I. GOVERNING LAW

Jackson's imprisonment limits his First Amendment right to practice his religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348–49, (1987). To be in prison is to suffer a reduction in rights as "justified by considerations underlying our penal system." *Price v. Johnson*, 334 U.S. 266, 285 (1948). Those reductions are valid if "reasonably related to legitimate security interests." *Turner v. Safley*, 482 U.S. 78, 91 (1987).

On top of that, it is the inmate's burden to show that a regulation or practice or policy impinges his First Amendment right. In fact, the inmate must "overcome the *presumption* that the prison officials acted

within their broad discretion" in acting or failing to act in the manner an inmate alleges here. *Shaw v. Murphy*, 532 U.S. 223, 232 (2001) (emphasis added), *quoted in Hayes v. Tennessee*, 2011 WL 2148416 at * 3 (6th Cir. Jun. 1, 2011). Once he overcomes that presumption his claim is assessed under the *Turner* test:

> 1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it,"
>
> 2) "whether there are alternative means of exercising the right that remain open to prison inmates,"
>
> 3) the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and
>
> 4) the "absence of ready alternatives."[3]

---

[3] As noted, "the RLUIPA imposes duties on prison officials that exceed those imposed by the First Amendment." *Jova*, 582 F.3d at 415. RLUIPA in part provides that

> [n]o government shall impose a *substantial* burden on the religious exercise of a person residing in or confined to an institution ... *even if* the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a) (emphasis added); *Jordan v. Caruso*, 2010 WL 3220143 at *4

*Kohn v. Coleman*, 2011 WL 2294147 at * 4 (D.S.C. May, 4, 2011) (*quoting Turner*, 482 U.S. at 89–90) (footnote added); *see also Williams*, 2011 WL 2173743 at *3; *Sayed v. Profitt*, 2011 WL 924476 at * 3-4 (10th Cir. Mar. 18, 2011) (Islamic prisoner could perform partial ablution at sink in his cell, and thus correctional facility's regional coordinator of faith programs did not substantially burden Islamic prisoner's First Amendment rights by refusing to permit him to shower outside pod-time prior to Jumu'ah services; prisoner could properly wash his feet, hands, mouth, nose, face, head, ears, and neck in sink, as required for partial ablution).

With an equal protection claim,

> "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and [that] (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir.2006); *see also Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n. 6 (11th Cir. 2008) (noting that "the equal protection clause prohibits only intentional discrimination.").

*Muhammad v. Sapp*, 388 F. App'x. 892, 899 (11th Cir. Jul. 21, 2010). The key element here is intent. The *Muhammad* court cited with

---

(W.D. Mich. Aug. 10, 2010); *Jones v. St. Lawrence*, 2011 WL 1831726 at * 1 (S.D. Ga. May 12, 2011).

approval *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n. 6 (11th Cir. 2008) ("the equal protection clause prohibits only intentional discrimination.") and *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815-16 (8th Cir. 2008) (prisoner's equal protection claim failed because he had not shown that the prison's decision to serve kosher entrees and not halal entrees was motivated by intentional or purposeful discrimination); *see also Muhammad*, 388 F. App'x. at 899 (prison officials did not violate Equal Protection Clause by providing Jewish inmates with kosher diet and not providing Muslim inmates with halal diet; facts viewed in light most favorable to Muslim inmate did not establish that prison's decision to serve kosher meals but not halal meals was the product of intentional discrimination).

## II. ANALYSIS

### A. First Amendment Claim

Jackson is *not* complaining that the Jail is *affirmatively* impinging on his right to a religious practice or custom, as seen in cases like *Zargary v. City of New York*, 412 F. App'x 339, 2011 WL 293976 at * 2-3 (2nd Cir. Feb. 1, 2011) (even if "ready alternatives" to the challenged policy existed,

city's policy of requiring all new prison inmates to be photographed without hats or other head coverings as part of its prisoner intake procedure did not violate prisoner's First Amendment rights insofar as it required her to briefly remove a headscarf she wore as part of her religious observance as an Orthodox Jew; policy was reasonably related to the City's unassailable interests in identifying prisoners and maintaining prison and prisoner safety and security), *and Riggins v. Clarke*, 403 F. App'x 292, 294 (9th Cir. 2010) (state corrections officials' enforcement of policy requiring that all prisoners use name under which they were committed to custody before any other official or religious name on all incoming and outgoing correspondence did not violate prisoner's First Amendment rights, as such policy was justified by legitimate penological interest in orderly and efficient administration of prison mail).

Rather, he complains that the Jail is not *doing enough* to accommodate the material demands of his claimed religious rituals (e.g., he wants a "Muslim Dorm," evidently to match what he calls the "Christian Dorms"; he also wants an "appointed area in every unit" for "obligatory five congregational (Salat) prayers daily," etc.). Provisioning

claims -- the institution has failed to provide something a religious adherent claims he needs to practice his religion -- have been recognized. *Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010) (pro se state prisoner's First Amendment right of freedom of religion was not violated by prison's lack of Jewish services and literature, and thus, prisoner could not prevail in § 1983 First Amendment claim on that basis; prisoner was the only inmate requesting Jewish services and literature, prison policies reasonably required minimum number of inmates to request religious services before they would be held, and there was no showing that prisoner was restricted from practicing Judaism privately or that the prison prevented him from requesting religious literature).

But provisioning claims can be problematic. "When the State, at taxpayer expense, facilitates the practice of religion in prison, has it transgressed the strictures of the Establishment Clause?" M.B. MUSHLIN, RIGHTS OF PRISONERS §7.12 at 134 (2009). Such claims can require judges to wade into troubling waters like determining the sincerity of one's faith,[4] whether one's faith *really* demands such a

---

[4] *See Davis v. Loya*, 2011 WL 2414914 at * 3 (S.D. Cal. Jun. 9, 2011) ("In order to implicate the Free Exercise Clause of the First Amendment, the Plaintiff[s] must show

practice,⁵ or even defining what *is* a faith.⁶ Courts also must determine a minimum threshold number of adherents in determining whether to issue what amounts to an unfunded mandate. *See, e.g., Colvin*, 605 F.3d at 291 (not enough adherents to justify a judicial mandate to prison to facilitate inmate's "Jewish services and literature" demands).

## B. Equal Protection

Unequal provisioning, meanwhile, can support Equal Protection claims. *See, e.g., Cruz v. Beto*, 405 U.S. 319, 321-22 (1972), *applied in Saleem v. Evans*, 866 F.2d 1313, 1316 (11th Cir. 1989). Jackson has not formally pled one. He arguably has pled *some* basic building blocks (what he is *not* receiving to enable his religious practices), but not the key

---

that their belief is sincerely held and rooted in religious belief.") (quotes omitted); *Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1027 (D. Minn. 2010); M.B. MUSHLIN, RIGHTS OF PRISONERS §7.15 at 146 (2009).

⁵ *See Thomas v. Croft*, 2011 WL 2200608 at * 4 (S.D. Ohio Jun. 7, 2011) ("First, the plaintiff must show that the religion in question is, in fact, a religion. If it is a non-traditional religion, the inmate must show that it occupies a place in the lives of its members parallel to that filled by the orthodox belief in God in religions more widely accepted in the United States.") (quotes and cite omitted); *see also Morgan v. Mississippi*, 2011 WL 2183427 at * 2 (5th Cir. Jun. 3, 2011) ("Moreover, Morgan failed to show that the practice of his religious faith was entirely circumscribed by the prison's Lenten policy.").

⁶ MUSHLIN, § 7.14 ("Defining Religion"); *id.* § 7:16 ("Nature of beliefs"); *see also Keesh v. Smith*, 2011 WL 1135929 at *1 (N.D.N.Y. Mar. 25, 2011) ("The Tulukeesh Holy Book, 'Holy Blackness,' recognizes plaintiff Tyheem Keesh as the savior and requires adherence to a number of religious practices.")

element -- intent. While the Court will grant him leave to amend and thus clarify that, he must be mindful of surrounding context. In *Jihad*, for example,

> the magistrate judge concluded that Jihad's sincerely held religious beliefs prohibit him from praying in a room with a toilet and also require him to perform five daily salat. The magistrate judge [(MJ)] then found that defendants' refusal to allow Jihad to pray outside of his cell-which contains a toilet-five times a day substantially burdens his religious practice. The [MJ] concluded, however, that prison safety and security requirements provided a compelling justification for that burden.

*Jihad*, 680 F.Supp.2d at 1027 (cites omitted). Accepting the MJ's reasoning and result, the district judge there noted

> that the safety of prison inmates and staff would be jeopardized by the increased movement of prisoners if inmates were allowed to leave their cells five times a day to pray. In addition, [the prison's] policy of allowing prayer during scheduled worship services or, alternatively, within the confines of an inmate's cell, is the least restrictive means of achieving the defendants' compelling interest in safety and security.

680 F. Supp. 2d at 1027; *see also id.* (even if prison policies prohibiting Muslim prisoner from wearing a Kufi, or prayer cap, or an Islamic medallion outside of his clothing while outside his cell substantially burdened his religious practice, the compelling interest of prison safety and security justified these narrowly-tailored regulations, and thus the

policies did not violate the prisoner's rights under either the First Amendment or the RLUIPA; prison policies allowed prisoner to freely wear these items within his cell).

Jackson's complaint does not allege what (if any) accommodations have been made, much less why they are deficient. And, while he asserts that specifically named defendants caused "this prejudice and discrimination," he pleads this in only conclusory, non-specific terms. That is not enough. *See supra* n. 2; *Fairwell v. Cates*, 2010 WL 3036759 at * 5 (E.D. Cal. Aug. 2, 2010).

Nevertheless,

> [t]he Eleventh Circuit has held that district courts should allow a *pro se* plaintiff an opportunity to amend [his] complaint "[w]here it appears that a more carefully drafted complaint might state a claim upon which relief can be granted." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir.2002)).

*Wise v. Heddell*, 2010 WL 2688730 at * 8 (M.D. Ga. Jul. 1, 2010) (footnote omitted).[7] The Court in its discretion therefore will give him a chance to

---

[7] "Although *Wagner* overruled *Bank* as to counseled litigants, it specifically stated that it did not address *pro se* litigants. *See Wagner*, 314 F.3d at 542 n. 1. Thus, the *Bank* rule remains applicable to *pro se* litigants when their complaints are dismissed with prejudice. *Id.*" *Duff*, 378 F. App'x at 872.

14

amend his complaint. He must do so within 30 days of the date this Order is served. But if he

> chooses to amend the complaint, [he] . . . must allege in *specific terms* how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362, 96 S. Ct. 598, 46 L.Ed.2d 561 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

*Fairwell*, 2010 WL 3036759 at * 5 (emphasis added). Thus, alleging that "the defendant unlawfully harmed me" is also insufficient. *Ashcroft*, 129 S. Ct. at 1949. Jackson must plead specifically *how* each defendant violated his rights, *which* rights they violated, when they were violated, and whether the violation was intentional as opposed to merely negligent.

## C. Money Damages

Next, even if Jackson adds a RLUIPA claim, he may face dismissal of any money damages component on Eleventh Amendment immunity grounds.[8] *See, e.g., Robinson v. Houston County*, 2010 WL 2464901 at * 4

---

[8] RLUIPA does not create a cause of action for damages against a State and state officials in their official capacities. Nor does it create a cause of action against state officials in their individual capacities. *Sossamon v. Texas*, 131 S.Ct. 1651, 1658-59

(M.D. Ga. Jun. 14, 2010) (sheriff who operated county jail was entitled to Eleventh Amendment immunity from suit in his official capacity).

Speaking of money damages, the Court is now able to rule his First Amendment-based "pain and suffering" damages claim (doc. 1 at 6) out of the case. In that Jackson has alleged no physical injury, his money damages claim, doc. 1 at 6, must be **DISMISSED**. *Kohn,* 2011 WL 2294147 at * 4 (no such damages are permitted, absent physical injury, under 42 U.S.C. § 1997e(e)).

The same must be said for any punitive damages claim. *Al-Amin v. Smith,* 637 F.3d 1192, 1199 (11th Cir. 2011). However, Jackson has not pled, and so this Court does not reach, any claim for nominal damages. *See id.* ("We also stress that this opinion does not address Al–Amin's ability to recover nominal damages, as this issue is not presently before us.").

D. **Plaintiff's PLRA-Payment Obligation**

Meanwhile, it is time for Jackson to pay the piper. Based on his furnished information, doc. 5 at 1 ($132.49 monthly balance for the last

---

(2011); *see also Smith v. Allen,* 502 F.3d 1255, 1272–75 (11th Cir. 2007); *Williams,* 2011 WL 2173743 at * 2 n. 2.

six months), the Court has determined that he has had funds in his prison account during the past six months and therefore owes an initial partial filing fee of $26.50. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "*when* funds exist," a specific 20 percent formula) (emphasis added). **IT IS THEREFORE ORDERED** that plaintiff's custodian (or designee) shall remit to the Clerk of Court (payable to the "Clerk of Court") $26.50 from Jackson's account. The custodian shall also set aside 20 percent of all future deposits to it, then forward those funds to the Clerk each time the set aside amount exceeds $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

**IT IS FURTHER ORDERED** that all payments shall be designated as made in payment of the filing fee for this Civil Action, No. CV410-291. *See* 28 U.S.C. §§ 1914(a), 1915(b)(1); *Fairwell*, 2010 WL 3036759 at * 1. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Report and Recommendation (R&R) and all financial information concerning payment of the filing fee and costs in this case to his new custodian. The

balance due from the plaintiff shall be collected by the custodian at his next institution in accordance with the terms of this Order.

A copy of this R&R shall be served upon the plaintiff and his current custodian. In that respect, the Clerk is **DIRECTED** to send this R&R to plaintiff's account custodian (Carmen Pilecek, doc. 5 at 1) immediately, as this "accounting" portion ("Part B" of this R&R) is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required.

**SO REPORTED AND RECOMMENDED** this  27th  day of June, 2011.

/s/ G.R. Smith<br>UNITED STATES MAGISTRATE JUDGE<br>SOUTHERN DISTRICT OF GEORGIA